UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL BIDUS. M.D.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FRANCISCAN MEDICAL GROUP a Washington Corporation,<br><br>　　　　　　Defendant. | No. 19-cv-6181-TSZ<br><br>**Amended Complaint for Retaliation In Violation of the Federal False Claims Act and the Washington State Medicaid Fraud False Claims Act** |

## I.　JURISDICTION AND VENUE

1.　This Complaint asserts claims for employment retaliation in violation of the False Claims Act, 32 U.S.C. § 3729, 3730 and Washington Medicaid Fraud False Claims Act. This Court has jurisdiction over these matters pursuant to federal law, including 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## II.　PARTIES

2.　Michael Bidus, M.D., brings this action for employment retaliation under the Federal False Claims Act and the Washington Medicaid Fraud False Claims Act (collectively, "FCA") against Franciscan Medical Group.

3.　Michael Bidus, M.D. is Washington resident.

4.　Franciscan Medical Group is a Washington corporation, UBI Number 601930162, doing business in Pierce County, Washington.  Franciscan Medical Group is Plaintiff's employer.

Amended Complaint – 1 of 10
(No. 19-cv-6181-TSZ)

BECK CHASE GILMAN PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

### III. Factual Allegations Stated In The December 10, 2019 Complaint

5. On December 10, 2019, Dr. Bidus filed a lawsuit setting forth the factual allegations outlined in paragraphs 5.1 through 5.23 below:

    5.1 Dr. Bidus is the Regional Medical Director of Gynecologic Specialties for CHI in Tacoma, Washington. Dr. Bidus is employed by a related corporate entity, Franciscan Medical Group ("FMG"), and has performed services as a Gynecological Oncologist for CHI since September of 2014.

    5.2 Dr. Bidus is a 1990 graduate of the United States Naval Academy in Annapolis, Maryland. In 1994, Dr. Bidus received his Doctorate of Medicine from Georgetown University School of Medicine in Washington, D.C.

    5.3 Dr. Bidus was initially hired to perform work for CHI in the fall of 2014.

    5.4 At the inception of his employment, Dr. Bahman Saffari told Dr. Bidus, in passing, that his wife did his medical billings for him. This was later repeated by Dr. Saffari's spouse, who is not an employee of CHI. New at the organization and previously working in the military setting without similar billing requirements, this did not register as significant to Dr. Bidus at the time.

    5.5 Shortly after his hire, Dr. Bidus was asked by Dr. Eve Cunningham, the Women's Service Line Chief, to review an independent audit of Dr. Saffari's practice. This audit was triggered because of the volume of billings occurring through Dr. Saffari's practice.

    5.6 The audit flagged a significant number of Dr. Saffari's cases. Dr. Bidus concurred with the assessment of the auditor as presented in the audit. Dr. Bidus presented the audit to Dr. Saffari as required by CHI. As Medical Director, Dr. Bidus would have and should have known if any further action was ever taken based on the

Amended Complaint – 2 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

results of this audit and to his personal knowledge, there was no internally initiated periodic peer review of Dr. Saffari's cases for surgical appropriateness or for appropriate billing.

5.7 For the next two years, Dr. Bidus, on a weekly basis, would operate in the same institution on the same day as Dr. Saffari. Dr. Bidus was also covering Dr. Saffari's patients while on call. The two shared call with a fairly even 50/50 split. Over this time, Dr. Bidus noticed that Dr. Saffari's surgical practices were different from his own. Both are Gynecologic Oncologists and generally should have the same patient mix and perform generally the same surgical procedures over time. However, Dr. Saffari often performed an additional surgical procedure during robotic hysterectomies that Dr. Bidus very rarely performed. Dr. Bidus also noticed that Dr. Saffari billed for this procedure. This procedure was peritoneal biopsy, billing CPT code 58662. Many of these additional procedures were medically unnecessary or unindicated.

5.8 Also, Dr. Saffari would almost always perform pelvic lymph node dissections on patients with endometrial cancer, without clear regard to whether the lymph node dissections were indicated. The standard of care requires that an intraoperative assessment of risk of lymph node metastasis be applied during surgery and then lymph nodes should only be removed in patients who meet the risk stratified criteria. However, Dr. Saffari performed node dissections on most of his patients. Additionally, his operative notes did not typically reflect detail in the findings to justify that node dissections were required.

5.9 On or about late 2017, Dr. Alison Ziari became the new Director for Surgical Services for Pierce County. At the time, Mary Anderson and Rosanne Richards were integrally involved in clinical operations for the Gynecological Oncology clinic for

Amended Complaint – 3 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

Dr. Bidus and Dr. Saffari. Dr. Bidus reported to both Anderson and Richards multiple times over the months regarding his concerns about billing fraud with Dr. Saffari, as well as his concerns that inappropriate procedures were being performed.

5.10  In 2018, Dr. Bidus also informed his supervisor Dr. Ziari directly and in person, of his concerns regarding these billing irregularities. Dr. Bidus also informed Brittany Crab, an Operations Administrator who directly works in the Operations side of CHI. Yet, over the course of the next year, there was no feedback or follow-up regarding these issues and so Dr. Bidus continued to express his concerns about fraud and inappropriate medical care.

5.11  In the summer of 2019, Dr. Bidus again addressed the fraud issue with Dr. Ziari and specifically and directly asked what was being done regarding the investigation into Dr. Saffari's care and billing practices. It was a particularly tense meeting. Dr. Bidus was directed to stay out of Dr. Saffari's patient charts unless he had specific medical reasons to be in the record. Dr. Bidus was also directly told that he should not inquire further, that Dr. Saffari's billing practices were not his concern, and that he was not entitled to know or be informed about what, if anything, was being done in this regard.

5.12  In September 2019, while on call taking care of one of Dr. Saffari's hysterectomy patients, Dr. Bidus observed that Dr. Saffari performed a lymph node dissection on the patient. As he read the operative report, Dr. Bidus found that the operative report specifically mentioned that the initial pathology review during the surgery showed that there was no cancer present in the uterus. Nevertheless, even with this information, Dr. Saffari still performed and billed for a node dissection. Dr. Bidus

Amended Complaint – 4 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

immediately communicated concerns about this specific patient to Dr. Ziari and again expressed his concerns about patient care and fraud.

5.13    At the end of October 2019, Rosanne Richards, from Clinical Operations approached Dr. Bidus and reported that while reviewing financial and operational reports, there were several concerning practice patterns regarding Dr. Saffari's practice. Dr. Bidus learned that CHI has generated a report showing that from January 1, 2018 to September 30, 2018, Dr. Saffari had 415 surgical consults in which he directly took care of the patients. Of those 415 consults, Dr. Saffari operated on 403 of the consults.

5.14    Also at the end of October 2019, Dr. Bidus learned that Dr. Saffari was routinely performing pelvic ultrasounds in the office and billing for these ultrasounds. As an oncology practice, nearly all their patients come to the clinic as referrals with the vast majority of the patients already having had imaging studies performed. Therefore, the imaging studies were without a reasonably necessary medical purpose and billed without a proper basis.

5.15    Dr. Bidus reported these events to his employer over the last several years. Beyond performing medically unnecessary and unjustified procedures with a lack of documentation to support these actions, Dr. Saffari was also aggressively acting to maximize the routing of referrals to his specific practice, resulting in a reduced number of referrals for Dr. Bidus. After informing CHI of the events outlined in this letter, CHI froze Dr. Bidus' pay for several months so that it would not continue to decrease as a result of the disproportionate referrals away from Dr. Bidus. However, Dr. Saffari learned of these events and sought a meeting with CHI CEO Ketul J. Patel and was later granted a meeting with COO Ian Worden. Following this meeting and in retaliation for Dr. Bidus'

Amended Complaint – 5 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

internal reporting, investigation, and opposition to fraud, CHI informed Dr. Bidus that the freeze to maintain his income was being removed.

5.16 CHI does not have or implement any meaningful anti-fraud polices or procedures. The situations outlined here include the particular details of a scheme to submit false claims. CHI has created an environment for false billing and inappropriate medical procedures and has allowed these practices to continue without recourse in other areas of patient care.

5.17 Dr. Bidus has sustained and continues to sustain economic and non-economic damages, including emotional distress as a result of these unlawful actions.

5.18 The Medicare program ("Medicare") is a health care program established under the Social Security Act to provide health care insurance coverage for services for persons who are 65 years and older or are disabled.

5.19 The Medicaid program ("Medicaid") was a health care program established under the Social Security Act and provides coverage to low-income individuals and is jointly funded by the state and federal government.

5.20 A substantial number of the patients serviced by CHI in the context of this complaint are covered by government health programs such as Medicare and Medicaid. The billings for unnecessary procedures and inappropriate healthcare were submitted to insurance, including Medicare and Medicaid.

5.21 Federal law provides:

(a) Liability for certain acts.—

    (1) In general.—Subject to paragraph (2), any person who—

     &nbs22%;(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

Amended Complaint – 6 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . . .

. . . .

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

5.22  RCW 74.09.210(1) provides:

No person, firm, corporation, partnership, association, agency, institution, or other legal entity, but not including an individual public assistance recipient of health care, shall, on behalf of himself or others, obtain or attempt to obtain benefits or payments under this chapter in a greater amount than that to which entitled by means of:

(a) A willful false statement;

(b) By willful misrepresentation, or by concealment of any material facts; or

(c) By other fraudulent scheme or device, including, but not limited to:

(i) Billing for services, drugs, supplies, or equipment that were unfurnished, of lower quality, or a substitution or misrepresentation of items billed; or

(ii) Repeated billing for purportedly covered items, which were not in fact so covered.

5.23  RCW 74.09.210(2) provides:

Amended Complaint – 7 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

> Any person or entity knowingly violating any of the provisions of subsection (1) of this section shall be liable for repayment of any excess benefits or payments received, plus interest at the rate and in the manner provided in RCW 43.20B.695. Such person or other entity shall further, in addition to any other penalties provided by law, be subject to civil penalties. The director or the attorney general may assess civil penalties in an amount not to exceed three times the amount of such excess benefits or payments: PROVIDED, That these civil penalties shall not apply to any acts or omissions occurring prior to September 1, 1979. RCW 43.20A.215 governs notice of a civil fine assessed by the director and provides the right to an adjudicative proceeding.

## IV. Retaliation Subsequent to December 10, 2019

6. Following the filing of this action on December 10, 2019, Dr. Bidus continued to oppose fraudulent practices through both verbal and written opposition.

7. In August of 2020, Dr. Bidus was removed from his position as Regional Medical Director for Women's Specialty Services. This action was taken because of Dr. Bidus' opposition to unlawful practices and his reporting of fraud.

8. Defendant continues to discriminate and retaliate against Plaintiff in work assignments and compensation through both its actions and its unwillingness to address the inconsistent treatment between his practice and the practice of Dr. Saffari, which was motivated by retaliatory animus following Dr. Bidus' opposition and filing of this action.

9. In addition to retaliation through workload distribution and decreasing compensation, Defendant has adversely impacted Dr. Bidus' practice by withholding operational and clinical resources and refusing to enforce operational policies designed to provide equitable opportunity, such as referral management instructions, operating room availability and nursing support. Dr. Bidus has reported these issues and retaliation to FMG leadership without resolution. These practices have disadvantaged and harmed Dr. Bidus' clinical practice. Recently, Dr. Bidus' clinical staff informed him that Dr. Saffari's operational staff have

Amended Complaint – 8 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

preferentially redirected consults from Kaiser Permanente in a disproportionate manner, and contrary to clinic policy, to Dr. Saffari. In addition, FMG has intentionally altered Kaiser referrals not named for a specific provider and inserted Dr. Saffari as the referred provider to disadvantage Dr. Bidus' practice.

10. Defendant further retaliated against Dr. Bidus by unlawfully disclosing Dr. Bidus' medical health condition to a patient, documenting his health condition in patient records and later refusing to remedy or address these actions.

11. Defendant has acted to damage Dr. Bidus' professional reputation by making and ratifying false and disparaging statements to nursing and floor staff at Saint Joseph Medical Center and to senior leadership. These practices have further created a hostile working environment and harmed Dr. Bidus' reputation and practice.

### V. Violations Of 31 U.S.C. § 3730(h) and RCW 74.66.090

12. 31 U.S.C. § 3730(h) prohibits discrimination and retaliation against "[a]ny employee, contractor, or agent" because such individual has acted "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

13. RCW 74.66.090 affords similar protection.

14. Defendant discriminated and/or retaliated against Dr. Bidus in violation of 31 U.S.C. § 3730(h) and RCW 74.66.090 because he engaged in conduct to stop its violations of the Federal FCA and the Washington Medicaid FCA. These actions caused both economic and non-economic damages.

15. Under 31 U.S.C. § 3730(h) and RCW 74.66.090(2), Dr. Bidus is therefore entitled to two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the unlawful conduct, including litigation costs and reasonable attorneys' fees, and any and all relief available under RCW 49.30.030(2).

Amended Complaint – 9 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

## VI. Prayer for Relief

Wherefore, Plaintiff requests that the Court enter judgment against Defendant as follows:

A. For judgment against Defendant for all past and future economic and non-economic damages including past and future wage loss;

B. For judgment against Defendant for damages as authorized by 31 U.S.C. § 3730(h) and RCW 74.66.090; and

C. For judgment against Defendant for all costs, attorneys' fees, and litigation expenses allowed under state and federal law;

D. For an enhanced award for tax consequences to make Plaintiff whole; and

E. For such other relief both at law and in equity, to which Plaintiff is entitled.

Dated January 3, 2022

Beck Chase Gilman PLLC

By: /s/ James W. Beck

By: /s/ Eric D. Gilman

By: /s/ Janelle E. Chase Fazio
James W. Beck, WSBA No. 34208
james@bcglawyers.com | D 253.289.5122
Eric D. Gilman, WSBA No. 41680
eric@bcglawyers.com | D 253.289.5108
Janelle E. Chase Fazio, WSBA No. 51254
janelle@bcglawyers.com | D 253.289.5136
Attorneys for Plaintiff Michael Bidus

Amended Complaint – 10 of 10
(No. 19-cv-6181-TSZ)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

# Certificate of Service

I certify that on January 3, 2022 in Tacoma, Washington, I caused the attached **Amended Complaint for Retaliation In Violation of the Federal False Claims Act and the Washington State Medicaid Fraud False Claims Act**

to be served as follows:

| | |
|---|---|
| Katie Denise Fairchild<br>US Attorney's Office<br>700 Stewart St<br>Ste 5220<br>Seattle, WA 98101-1271<br>Email: katie.fairchild@usdoj.gov<br>Attorneys for Party of Interest United States of America | Via:<br>☐ Messenger<br>☐ First Class U.S. Mail<br>☒ Electronic CM/ECF Notification<br>☐ Email per e-service agreement<br>☐ _____ |
| Matthew T. Kuehn<br>Karl Sloan<br>Washington Office of the Attorney General<br>P.O. Box 40114<br>Olympia, WA 98504<br>Email: Matthew.Kuehn@atg.wa.gov<br>Email: karl.sloan@atg.wa.gov<br>Attorneys for Party of Interest State of Washington | Via:<br>☐ Messenger<br>☐ First Class U.S. Mail<br>☒ Electronic CM/ECF Notification<br>☐ Email per e-service agreement<br>☐ _____ |
| Jessica M Andrade<br>Polsinelli PC<br>1000 2nd Avenue, Suite 3500<br>Seattle, WA 98104<br>Jessica.andrade@polsinelli.com<br>Attorneys for Defendants Franciscan Health System d/b/a CHI Franciscan, and Franciscan Medical Group | Via:<br>☐ Messenger<br>☐ First Class U.S. Mail<br>☒ Electronic CM/ECF Notification<br>☐ Email per e-service agreement<br>☐ _____ |

   /s/ Desiree Williams
Desiree Williams, Paralegal
BECK CHASE GILMAN PLLC

---

Amended Complaint – Certificate of Service
(No. 19-cv-6181-TSZ)



Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com